IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Newport News Division

FILED
IN OPEN COURT

JUL 1 7 2018

CLERK, U.S. DISTRICT COURT
NEWPORT NEWS VA

| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 4:18cr23 |
|---|---|---|
| v. | ) | |
| BYRON HALE DELAVAN, | ) | 18 U.S.C. § 371<br>Conspiracy to Defraud the United States<br>(Count 1) |
| Defendant. | ) | 26 U.S.C. § 7206(2)<br>Aiding in the Preparation of False Tax Returns<br>(Counts 2 – 23) |
| | ) | 18 U.S.C. § 1341<br>Mail Fraud<br>(Counts 24 – 26) |
| | ) | 18 U.S.C. § 1343<br>Wire Fraud<br>(Counts 27 – 29) |
| | ) | 18 U.S.C. § 1957<br>Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity<br>(Counts 30 - 35) |
| | ) | 18 U.S.C. §§ 981 & 982 and<br>21 U.S.C. § 853(p)<br>Forfeiture |

## SUPERSEDING INDICTMENT

July 2018 Term - At Newport News, Virginia

## GENERAL ALLEGATIONS

1. From at least in or about 2011 through in or about 2015, BYRON HALE DELAVAN (hereinafter "DELAVAN"), the defendant herein, owned and/or operated three different businesses in the Eastern District of Virginia, to include: American Recovery Services, LLC (hereinafter

1

"ARS"), Tidewater Insurance Services, LLC (hereinafter "TIS"), and Tradewinds Business Alliance, LLC (hereinafter "TBA").

2. DELAVAN sold life insurance policies to individuals through TIS. The ownership of TIS consisted of DELAVAN (70%) and TBA (30%). DELEVAN used TIS to report his only legitimate source of income, which consisted of commissions received from the sale of these life insurance policies. The ownership of ARS and TBA consisted of multiple individual members or partners.

3. DELAVAN registered ARS with the Virginia State Corporation Commission in or about 1999. Its registration was cancelled in December 2011 due to the nonpayment of annual fees. Similarly, after DELAVAN registered TBA in 2000, its registration was cancelled in December 2007, subsequently reinstated and cancelled again in September 2012 for the nonpayment of annual fees, and again reinstated in February 2017.

4. NEIL CURRY SMITH (hereinafter "SMITH), operated a small tax return preparation business. SMITH resided in Kingsport, Tennessee, but maintained an office in a house that he owned in Norfolk, Virginia. SMITH prepared federal income tax returns for ARS (tax years 2009 – 2013, 2015) and TBA (tax years 2010, 2011, 2013, 2015).

5. For the years 2011 through 2015, ARS and TBA reported little or no income on each company's respective federal tax return, yet the companies claimed large losses that were primarily generated from the reporting of bad debt expenses of several hundred thousand dollars a year. In order for a business entity to write-off, or deduct, bad debt losses on a tax return, the amount so deducted must have been included as income on a prior year's tax return. For the years 2002 through the present, tax returns for ARS and TBA revealed that reported bad debts far exceeded any income

reported.

6. ARS and TBA had no apparent business purposes other than to provide fictitious losses to the partners in those businesses that were used to reduce taxable income on the partners' returns. DELEVAN claimed that the entities purchased old debts and/or judgments and, when the entities could not collect, the resulting losses from the bad debt expenses could be passed through to each member/partner of the LLC for use on their individual tax returns. Thus, ARS and TBA served as a tax shelter to its partners.

7. In order to obtain member/partners in ARS and TBA, DELAVAN marketed a "tax plan" to multiple individuals, a number of which were also clients of his life insurance business. DELAVAN claimed that the plan would reduce these individuals' taxes and enable them to receive most or all of their federal income tax withholdings as a tax refund. DELAVAN further claimed that the tax savings could be used to pay large life insurance premiums for policies he had sold those individuals.

8. To join the tax plan, each individual generally paid a one-time fee of $10,000 to $12,500. Upon doing so, the individual participant was added as a "partner" of ARS and/or TBA. As a result, the losses claimed by ARS and/or TBA flowed through to the personal income tax returns of the partners or plan-participants (hereinafter referred to as "partners").

9. In addition to the tax returns prepared for ARS and TBA described above, SMITH prepared federal individual income tax returns for all but one of the partners or plan-participants. With information and assistance provided by DELAVAN, SMITH provided the partners with Schedules K-1, Partner's Share of Income, Deductions, Credits, etc., from ARS and/or TBA, which were then reported on the partners' individual tax returns. The partners paid a separate fee to

SMITH for the preparation of their tax returns and also provided records to either SMITH or DELAVAN for this preparation.

10. DELAVAN and SMITH assigned and affixed the ownership percentages of each partner based not on the amount of the fee paid by each partner, but on the size of loss needed to offset each partner's taxable income. Additionally, DELAVAN and SMITH caused losses to be reported on the partner's tax returns as "non-passive" losses.

11. To qualify losses as "non-passive," a taxpayer generally must materially participate in the business that has sustained the losses. A taxpayer materially participates if he or she is involved in the operations of the business activity on a regular, continuous, and substantial basis. The tax returns SMITH prepared all reported the losses from ARS and TBA as non-passive; however, none of the so-called partners participated in the management of the companies and many had no knowledge as to the operations and/or business activity of ARS or TBA.

12. As a result of falsified non-passive losses on the partners' federal individual income tax returns, DELAVAN and SMITH caused the partners to receive false refunds of at least $408,000 for the tax years 2011 through 2015.

13. DELAVAN did not file personal federal income tax returns for the tax years 2010 - 2013. DELEVAN filed tax returns for tax years 2014 and 2015 in January and June 2016, respectively. These tax returns, prepared by SMITH, reported minimal income from TIS and large net operating losses in excess of $400,000.

14. SMITH filed personal federal income tax returns for 2010 – 2013 tax years. The returns for tax years 2010 – 2012 generally reported Schedule C income from SMITH's tax preparation business, pension income for his wife and a non-passive loss from ARS.

4

15. In addition to and/or in conjunction with the aforementioned tax plan, DELAVAN solicited a number of individuals to provide funds for a debt recovery business and the purchase of collectibles. DELEVAN induced individuals to provide the funds by making representations about the security, nature and purpose of the proposed investments.

16. With respect to the debt recovery business, DELAVAN solicited investments and/or loans from several individuals that he represented were to be used by ARS and/or TBA to purchase additional bad debt. In some situations, DELAVAN provided written promissory notes to the individuals; in others, the agreements were oral in nature.

17. Notwithstanding these representations and contrary to their nature, DELAVAN used large portions of the invested/loaned funds to pay for the unrelated personal and business expenses of DELAVAN and his family and to repay prior investors. DELAVAN did not disclose that the invested/loaned funds would be used to pay personal expenses and/or to make payments to other investors. In at least one documented agreement, DELAVAN specifically stated that the invested/loaned funds would not be used for "personal, family or household purposes."

18. DELAVAN also solicited individuals to purchase collectibles that he claimed to have in his possession; however, the funds obtained by DELAVAN were primarily used to pay personal expenses and/or to pay prior investors.

19. DELAVAN controlled several bank accounts held at Wells Fargo Bank. The primary account used by DELAVAN in the above-described solicitations was in the name of TBA (account number ending in 6694). While DELAVAN was not the sole signatory on the TBA account, the other signer (DELAVAN's office manager), only conducted transactions in the account at DELAVAN's specific direction.

20. During the period of January 1, 2011 through October 31, 2016, at least $559,564 of invested/loaned funds were deposited to the TBA account. Approximately $274,900 of investor funds were deposited into another account controlled by DELAVAN at Wells Fargo. DELAVAN used such funds to pay personal expenses, pay other investors, and to make transfers to other unrelated accounts under DELAVAN's control.

## SCHEME AND ARTIFICE

1. From at least 2011 through in or about 2016, DELAVAN created a scheme and artifice to defraud and obtain approximately $834,464 from various individuals by making various materially false representations, promises and omissions in order to fraudulently entice individuals to invest/lend funds to DELAVAN or associated entities and to fraudulently divert and use these funds for various personal and other purposes unrelated to the representation made.

2. It was a part of the scheme and artifice that the defendant, through the use of materially false representations, promises and omissions, solicited funds and/or loans from various individuals. Such false representations, promises and omissions related to the security, nature and purpose of the proposed investments .

3. It was further a part of the scheme and artifice that the defendant entered into agreements (written and oral) with certain investors, in which the defendant falsely promised not use the funds provided for personal use and failed to disclose the planned use of the funds.

4. It was further a part of the scheme and artifice that the defendant maintained and exercised full control over the disbursement of all funds. The defendant maintained different personal or business accounts through which he made regular deposits, transfers, and disbursements.

5. It was further a part of the scheme and artifice that the defendant fraudulently used and diverted invested/loaned funds obtained through these solicitations for his own purpose and benefit, unrelated to the representations and promises made to investors. The defendant concealed such diversions from investors.

6. It was further a part of the scheme and artifice that the defendant offered and caused to be offered various false and lulling explanations and promises as to how the defendant would use the invested/loaned funds and why individuals could not be repaid.

7. It was further a part of the scheme and artifice that DELAVAN used investments/loans from more recent investors/lenders to make interest payments to existing investors/lenders, without advising the newer investors/lenders as to the purpose for which their investments/loans were to be used.

8. It was further a part of the scheme and artifice that the defendant caused the use of various wire transmissions in interstate commerce, between the Eastern District of Virginia and locations outside the Commonwealth of Virginia

9. It was further a part of the scheme and artifice that the defendant caused the use of the United States mails in connection with, among other purposes, providing repayments to various individuals.

## COUNT ONE

THE GRAND JURY CHARGES THAT:

1. The factual allegations contained in the General Allegations section are incorporated herein by reference as if set out in full.

2. From on or about 2011, the exact date being unknown to the Grand Jury, and continuing to in or about June 2016, the exact date being unknown to the Grand Jury, in the Eastern District of Virginia and elsewhere, BYRON HALE DELAVAN, the defendant herein, unlawfully, voluntarily, intentionally, and knowingly did conspire, combine, confederate, and agree together with NEIL CURRY SMITH, and with other individuals both known and unknown to the Grand Jury, to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the IRS in the ascertainment, computation, assessment, and collection of federal income taxes.

## WAYS MANNER AND MEANS

3. The ways, manner and means by which the foregoing objectives of the conspiracy to defraud the United States, for the purpose of impeding, impairing, obstructing and defeating the lawful government functions of the IRS in the ascertainment, computation, assessment, and collection of federal income taxes, were to be accomplished by the defendants included, but were not limited to, the following:

    a. Soliciting and recruiting individuals to join a tax shelter plan that conspirators falsely represented would result in the legitimate refund of federal income tax withholdings to the partners for large fees to be paid to the conspirators;

    b. Determining losses to be distributed to the partners based on the need to

8

offset individual taxable income rather than in relation to fees paid by the partners;

  c. Preparing false and fraudulent federal individual income tax returns for ARS, TBA and the partners that contained false information as to bad debt losses that were falsely characterized as "non-passive" losses on the partners' individual income tax returns;

  d. Causing the submission to the IRS of false documents, including false Forms 1040, U.S. Individual Income Tax Returns ("Forms 1040"), all forms related to the reporting of non-passive losses sustained by partner-participants in the tax plan.

## OVERT ACTS

In furtherance of the conspiracy, and to effect the objects thereof, BYRON HALE DELAVAN, the defendant herein, together with NEIL CURRY SMITH, committed the overt acts listed below, among others, within the Eastern District of Virginia, and elsewhere:

  1. DELAVAN and SMITH caused the preparation of Schedules K-1 for the tax plan participants, who became partners in ARS and TBA, which were then used in the preparation of individual income tax returns that reported fraudulent non-passive losses. DELAVAN and SMITH determined the loss to be put on the Schedule K-1 for each partner in ARS or TBA based on the amount of income the partner required to be offset in order to decrease tax liability. Although each partner paid a similar fee to join the tax plan, each partner's ownership percentage of ARS or TBA was correlated to the amount of income that they needed to have offset on their tax returns.

  2. DELAVAN and SMITH caused income tax returns to be filed for ARS and TBA that reported little to no income, but large bad debt expenses, which generated the losses that members of the tax plan used to offset income on their individual tax returns. SMITH also used

such losses on his return.

3. DELAVAN instructed one tax plan member to prepare a draft of the member's income tax return each year and then provide certain figures to DELAVAN, so that DELAVAN and SMITH could determine the loss amounts to list on the member's Schedule K-1.

4. From in or about April 15, 2012, and continuing through at least June 27, 2016, as detailed, in part, in the table accompanying Counts 2 – 23 of this Indictment and which is incorporated herein, DELAVAN and SMITH caused fraudulent federal tax returns to be prepared and submitted to the IRS for ARS, TBA, and various partners.

5. In connection with the fraudulent tax shelter scheme, from in or about at least 2011 through in or about June 2016:

    a. DELAVAN solicited C.B. to join his tax plan and referred C.B. to SMITH to have returns prepared that contained false non-passive losses for TBA, which resulted in claims and receipt of approximately $12,008 in tax refunds.

    b. DELAVAN solicited D.B. to join his tax plan and referred D.B. to SMITH to have individual tax returns prepared that contained false non-passive losses for ARS and TBA, which resulted in claims and receipt of approximately $31,670 in tax refunds.

    c. DELAVAN solicited R.B. to join his tax plan and referred R.B. to SMITH to have individual tax returns prepared that contained false non-passive losses for ARS and TBA, which resulted in claims and receipt of approximately $22,596 in tax refunds.

    d. DELAVAN solicited A.C. and G.C. to join his tax plan and referred A.C. and G.C. to SMITH to have individual tax returns prepared that contained false non-passive losses for ARS and TBA, which resulted in claims and receipt of approximately $4,737 in tax refunds.

  e. DELAVAN solicited D.C. to join his tax plan and referred D.C. to SMITH to have individual tax returns prepared that contained false non-passive losses for TBA, which resulted in claims and receipt of approximately $20,339 in tax refunds.

  f. DELAVAN solicited S.E. to join his tax plan and referred S.E. to SMITH to have individual tax returns prepared that contained false non-passive losses for TBA, which resulted in claims and receipt of approximately $15,202 in tax refunds.

  g. DELAVAN solicited J.O. to join his tax plan (described as a "recovery business" for the purposes of lowering their taxes) and referred J.O. to SMITH to have Schedule K-1s prepared that contained false non-passive losses for ARS and TBA, which resulted in claims and receipt of approximately $19,517 in tax refunds.

  h. DELAVAN solicited S.R. to join his tax plan and referred S.R. to SMITH to have individual tax returns prepared that contained false non-passive losses for ARS or TBA, which resulted in claims and receipt of approximately $31,785 in tax refunds.

  i. DELAVAN solicited B.T. to join his tax plan and referred B.T. to SMITH to have individual tax returns prepared that contained false non-passive losses for TBA, which resulted in claims and receipt of approximately $8,843 in tax refunds.

  j. DELAVAN solicited J.W. to join his tax plan and referred J.W. to SMITH to have individual tax returns prepared that contained false non-passive losses for TBA, which resulted in claims and receipt of approximately $365 in tax refunds.

  k. DELAVAN solicited G.C. and P.C. to join his tax plan and referred G.C. and P.C. to SMITH to have individual income tax returns prepared that contained false non-passive losses for TBA, which resulted in claims and receipt of approximately $36,637 in tax refunds.

l.  DELAVAN solicited K.L. to join his tax plan and referred K.L. to SMITH to have individual income tax returns prepared that contained false non-passive losses for ARS and TBA, which resulted in claims and receipt of approximately $7,155 in tax refunds.

m.  DELAVAN solicited G.S. to join his tax plan and referred G.S. to SMITH to have individual income tax returns prepared that contained false non-passive losses for TBA, which resulted in claims and receipt of approximately $118,316 in tax refunds.

6.  DELAVAN assured certain members of the tax plan that it was legitimate and claimed he had prevailed over the IRS in a previous dispute over the tax plan.

7.  After one member questioned DELAVAN about the legitimacy non-passive losses reported on the member's tax return, DELAVAN sent the member an email in or around November 2015 claiming that DELAVAN had spoken with SMITH about the situation and that there had been a problem with the tax software that SMITH used to prepare the tax plan members' returns that improperly reported passive losses as non-passive. DELAVAN claimed that the issue had been fixed. Despite this explanation, at least seven 2015 tax returns were filed for members of the tax plan by SMITH in 2016, all of which reported non-passive losses from TBA.

8.  DELAVAN charged and received from each individual tax plan participant a fee ranging from $10,000 to $12,500. Additionally, SMITH received separate fees from some of the plan-participants related to the preparation of their tax returns.

(All in violation of Title 18, United States Code, Section 371.)

## COUNTS TWO THROUGH TWENTY-THREE

THE GRAND JURY CHARGES THAT:

1. The Grand Jury realleges and incorporates by reference the General Allegations section contained above, as if fully set forth herein.

2. On or about the dates and in the manner set forth herein, in the Eastern District of Virginia and elsewhere, BYRON HALE DELAVAN, the defendant herein, aided and abetted by and along with co-conspirator NEIL CURRY SMITH, did willfully aid and assist in, and procure, counsel and advise the preparation and presentation to the Internal Revenue Service of United States, Individual Income Tax Returns, Forms 1040, either individual or joint, for the taxpayers and calendar years hereinafter specified, which were false and fraudulent as to material matters, in that they represented that the said taxpayers sustained false and fictitious non-passive losses, which resulted and/or contributed to the loss figures reported on Schedule E and Line 17 of the below-referenced income tax returns, and had the effect of reducing tax liability and claiming falsely inflated refunds, whereas, as the defendants then and there well knew and believed, the returns reported false and fictitious non-passive losses on Schedule E and Line 17 of the returns, the taxpayers were not entitled to the refunds claimed, which false items resulted in the approximate specified amount of tax losses sustained by the United States:

| Count | Date of Filing (on or about) | Taxpayer(s) | Calendar Tax Year | Falsely Claimed Item (Line 17: Schedule E losses) | Approximate Tax Loss Resulting from False Item |
|---|---|---|---|---|---|
| 2 | 5/27/2013 | D.B. / C.B. | 2012 | $40,373 | $5,681 |
| 3 | 5/29/2014 | D.B. | 2013 | $21,054 | $3,870 |
| 4 | 4/27/2015 | D.B. | 2014 | $48,596 | $9,937 |
| 5 | 1/31/2014 | R.B. / S.B. | 2012 | $52,472 | $8,442 |
| 6 | 6/27/2014 | R.B. / S.B. | 2013 | $58,073 | $10,728 |
| 7 | 4/29/2015 | R.B. | 2014 | $29,157 | $4,133 |
| 8 | 4/15/2012 | A.C. / G.C. | 2011 | $85,500 | $15,609 |
| 9 | 5/20/2013 | A.C. / G.C. | 2012 | $100,878 | $21,566 |
| 10 | 5/29/2014 | A.C. / G.C. | 2013 | $51,844 | $13,238 |
| 11 | 7/11/2015 | A.C. / G.C. | 2014 | $69,656 | $17,016 |
| 12 | 5/29/2014 | D.C. | 2013 | $40,998 | $8,667 |
| 13 | 6/5/2015 | D.C. | 2014 | $34,538 | $7,552 |
| 14 | 6/27/2016 | S.E. | 2015 | $15,363 | $4,300 |
| 15 | 4/15/2012 | J.O. / C.O. | 2011 | $78,125 | $11,531 |
| 16 | 5/4/2013 | J.O. / C.O. | 2012 | $45,411 | $8,869 |
| 17 | 4/15/2014 | J.O. / C.O. | 2013 | $15,816 | $3,664 |
| 18 | 4/15/2015 | J.O. / C.O. | 2014 | $15,099 | $4,103 |
| 19 | 5/6/2013 | S.R. | 2012 | $135,222 | $34,674 |
| 20 | 5/13/2014 | S.R. | 2013 | $10,808 | $1,417 |
| 21 | 4/27/2015 | S.R. | 2014 | $67,687 | $13,425 |
| 22 | 5/13/2014 | J.W. | 2013 | $35,323 | $4,815 |
| 23 | 4/27/2015 | J.W. | 2014 | $28,533 | $3,548 |

(In violation of Title 26, United States Code, Section 7206(2).)

## COUNTS TWENTY-FOUR THROUGH TWENTY-SIX

THE GRAND JURY FURTHER CHARGES THAT:

1. The factual allegations contained in the General Allegations section are incorporated herein by reference as if set out in full.

2. On or about the dates and in connection with the transaction described herein, within the Eastern District of Virginia and elsewhere, BYRON HALE DELAVAN, the defendant herein, having devised and intended to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false, fraudulent and fictitious pretenses, representations, and promises, and, for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises the defendants and others, did knowingly cause to be placed in a post office, in an authorized depository for mail matter to be sent and delivered by the Postal Service or caused to be deposited a matter or thing to be sent or delivered by private or commercial interstate carrier according to the directions thereon the following matters and things:

| Count | Date Placed in or Received by Mail (on or about) | Description of Item(s) Mailed |
|---|---|---|
| 24 | 7/22/2013 | Interest check paid to investor C.H. |
| 25 | 3/27/2014 | Partial principal repayment paid to investor S.R. from TBA |
| 26 | 9/19/2015 | Interest check paid to investor C.B. from TBA |

(In violation of Title 18, United States Code, Section 1341.)

## COUNTS TWENTY-SEVEN THROUGH TWENTY-NINE

THE GRAND JURY CHARGES THAT:

1. The factual allegations contained in the General Allegations section are incorporated herein by reference as if set out in full.

2. On or about the dates and in connection with the transactions described herein, BYRON HALE DELAVAN, the defendant herein, having devised and intended to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false, fraudulent and fictitious pretenses, representations and promises, and, for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, in the Eastern District of Virginia and elsewhere, did knowingly and willfully transmit and cause to be transmitted by means of wire communication in interstate commerce, the following certain signs, signals, and sounds: to wit, the following electronic mail sent from, through or to locations within the Eastern District of Virginia, to, through or from locations outside the Commonwealth of Virginia.

| Count | Date of Wire Transmission (on or about) | Description of Wire Transmission |
|---|---|---|
| 27 | 1/21/2014 | Email from defendant to J.O., in which defendant asked J.O. for "your line 43" (the taxable income figure on a tax return). |
| 28 | 4/8/2014 | Email from defendant to C.B. in which defendant indicated that he was able to return part of the investment because the funds had not yet been "deployed" but that other funds "were deployed in such a fashion that they are not as readily available." |
| 29 | 4/19/2014 | Email from defendant to C.B. in which defendant indicated that C.B.'s money had been committed for a year and was not available for withdrawal unless (1) the defendant would "unravel the funds which you gave to me," which would "result in a significant loss, a loss I am not willing to take so it would be a loss which I would have to pass on to you" (2) or through enforcing a judgment the defendant claimed he obtained. |

(In violation of Title 18, United States Code, Section 1343.)

## COUNTS THIRTY THROUGH THIRTY-FIVE

THE GRAND JURY FURTHER CHARGES THAT:

1. The factual allegations contained in the General Allegations section are incorporated herein by reference as if set out in full.

2. On or about the following dates and in the manner described below, in the Eastern District of Virginia and elsewhere, BYRON HALE DELAVAN, the defendant herein, did knowingly engage and attempt to engage in the following monetary transactions by, through and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, money deposits which represented fraudulently obtained funds from investors, such property having been derived from a specified unlawful activity, that is Mail Fraud and Wire Fraud in violation of Title 18, United States Code, Sections 1341 and 1343:

| Count | Date (on or about) | Financial Transaction |
|---|---|---|
| 30 | 10/29/2013 | Defendant caused an electronic transfer $40,000 from a TBA bank account to another bank account in the name of Trillium Numismatics, owned and/or operated by defendant. |
| 31 | 10/30/2013 | Defendant made an investor repayment to G.A. via check in the amount of $12,500. |
| 32 | 11/21/2013 | Defendant made an investor repayment to T.S. via check in the amount of $16,000. |
| 33 | 11/12/2015 | Defendant made an investor repayment to R.B. via check in the amount of $27,000. |
| 34 | 11/12/2015 | Defendant made an investor repayment to J.W. via check in the amount of $13,000. |
| 35 | 7/8/2016 | Defendant made a payment to M.H. via check in the amount of $54,000. |

(In violation of Title 18, United States Code, Section 1957.)

## FORFEITURE ALLEGATION

THE GRAND JURY FURTHER ALLEGES AND FINDS PROBABLE CAUSE THAT:

    1.    The defendant, if convicted of any of the violations alleged in Counts 24 through 29 of this Superseding Indictment, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property, real or personal, which constitutes or is derived from proceeds traceable to any of the violations.

    2.    The defendant, if convicted of any of the violations alleged in Counts 30 through 35 of this Superseding Indictment, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property, real or personal, involved in any of the violations, or any property traceable to that property.

    3.    If any property that is subject to forfeiture above, as a result of any act or omission of the defendant, (a) cannot be located upon the exercise of due diligence, (b) has been transferred to, sold to, or deposited with a third party, (c) has been placed beyond the jurisdiction of the Court, (d) has been substantially diminished in value, or (e) has been commingled with other property that cannot be divided without difficulty, it is the intention of the United States to seek forfeiture of any other property of the defendant, as subject to forfeiture under Title 21, United States Code, Section 853(p).

    4.    The property subject to forfeiture includes, but is not limited to, the following property:

        a.    A monetary judgment in the amount of not less than $834,464 representing the proceeds of the scheme alleged in Counts 24 through 35.

(In accordance with Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1); Title 28, United States Code, Section 2461.)

United States v. Byron Hale Delavan, 4:18cr23

A TRUE BILL:
> Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.

_____
FOREPERSON

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By: *[signature]*
Brian J. Samuels
Assistant United States Attorney
Virginia State Bar No. 65898
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866