IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Criminal No. 4:18cr23 |
| ) | |
| BYRON HALE DELAVAN, ) | |
| ) | |
| Defendant. ) | |

## MOTION OF THE UNITED STATES
## TO INQUIRE ABOUT POSSIBLE CONFLICT OF INTEREST

The United States of America, by and through its attorneys, G. Zachary Terwilliger, United States Attorney for the Eastern District of Virginia, and Brian J. Samuels and Howard J. Zlotnick, Assistant United States Attorneys, moves this Honorable Court to resolve a conflict of interest regarding the representation of the defendant by Trey R. Kelleter. In support thereof, the United States represents:

### BACKGROUND

1. On March 12, 2018, a federal grand jury returned a twenty-three count indictment against BYRON HALE DELAVAN, the defendant herein, as well as co-defendant NEIL CURRY SMITH, who has since pled guilty. (ECF No. 3). On July 17, 2018, the defendant herein, was charged in a thirty-five count superseding indictment. The defendant has been represented throughout the proceedings by Trey R. Kelleter. Trial is currently scheduled for November 6, 2018, and a motions hearing is scheduled for October 31, 2018.

2. The instant investigation involves tax, fraud and money laundering charges related to the defendant's use of various entities that he owned and controlled. Specific transactions are

1

alleged in the superseding indictment, where checks were issued to individuals signed by M.A., as caused by the defendant (including a check that forms the basis for Count 26 of the superseding indictment). M.A. was the defendant's long-time assistant, only employee, a signatory on various accounts of the defendant and/or his businesses and familiar with various financial transactions conducted by the defendant. She is an anticipated witness for the United States and was interviewed by IRS-CID on December 15, 2016. A memorandum summarizing this interview was provided to Attorney Kelleter on September 27, 2018. Among other things, M.A. stated she only wrote checks instructed as instructed by the defendant; that she was never aware of assets owned by the defendant's company; that she knew nothing about a tax plan marketed by the defendant or bad debts obtained by the businesses that were related to the tax plan; that the defendant used some loans to pay personal expenses; and that she paid others as directed by the defendant prior to paying herself. Another witness identified M.A. in a bookkeeping role for the defendant's companies that are issue in various transactions.

3. Apart from the instant investigation and indictment, the defendant was previously the subject of prior investigations by other agencies, including the Federal Bureau of Investigation. In the course of one of these prior investigations, M.A., was interviewed by FBI agents on July 12, 2010. In the course of that interview, M.A. was represented by attorney Kelleter. M.A. was interviewed about her employment with the defendant, his various business entities and the financial arrangements and transactions related to those entities and the defendant. A twelve-page FBI FD-302 form ("the 302") was prepared as a result of that interview and provided to Attorney Kelleter on October 17, 2018. Though it related to a prior investigation of the defendant, the United States provided the 302 along with 302s of other overlap witnesses to

Attorney Kelleter. The United States can provide these memoranda to the Court for review in advance of any inquiry.

4. Although Attorney's Kelleter's representation of M.A. is reflected in the first paragraph of the 302, the United States did not notice that he had previously represented M.A. until the morning of October 25, 2018. The United States directly informed Attorney Kelleter about the issue of his prior representation of an anticipated government witness at trial.

## DISCUSSION

The Sixth Amendment guarantees criminal defendants the right to assistance of counsel. An essential part of that right is a defendant's right to select counsel of his choice. *Powell v. Alabama*, 287 U.S. 45 (1932). The right to select counsel is not absolute. The need for fair, efficient, and orderly administration of justice overcomes the right to counsel of choice where an attorney has an actual or potential conflict of interest. *Wheat v. U.S.*, 486 U.S. 153, 160 (1988)("federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them"). Where a potential conflict exists, the prosecution must bring the matter to the attention of the court, with reversal likely for failure of either the government or the court to follow prescribed procedures. *United States v. Levy*, 25 F.3d 146, 152 (2nd Cir. 1994).

While the trial court must recognize the presumption in favor of a defendant's counsel of choice, that presumption "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Wheat v. U.S.*, 486 U.S. at 164. Upon learning of a possible conflict, the Court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no

genuine conflict at all." *United States v. Rogers*, 209 F.3d 139, 143 (2nd Cir. 2000).

Because the interests of counsel's prior client and the defendant may become adverse, there is a potential conflict that must be addressed. The defendant faces a criminal trial, and thus, has a paramount interest in challenging the evidence against him, which may include the testimony of M.A. Should the two clients clearly have adverse interests, Attorney Kelleter would have an actual conflict that violates the Virginia Code of Professional Responsibility and the rules of this Court (Local Rule 83.1(I)). Disciplinary Rule (DR) 5-105(C) provides in relevant part:

> A lawyer who has represented a client in a matter shall not thereafter represent another person in the same or substantially related matter if the interest of that person is adverse in any material respect to the interest of the former client unless the former client consents after disclosure.

The Ethical Considerations accompanying that rule make it clear that multiple representation of clients having potentially different interests is prohibited:

> If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with potentially differing interests, and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests.

EC 5-15. These ethical rules reflect the fundamental proposition that a client has a right to the loyal, conflict-free representation of his or her lawyer.

This type of conflict is precisely the kind of conflict that has been condemned by the federal courts. *See Wheat v. United States*, 486 U.S. 153 (1988)(lawyer representing three co-defendants in drug conspiracy had conflict despite waivers when one client entered plea and was prepared to

testify against remaining co-defendant clients); *Hoffman v. Leeke*, 903 F.2d 280 (4th Cir. 1990)(lawyer representing defendant and government witness in same case had conflict which adversely affected representation despite waivers by both clients); and *United States v. Alvarez*, 580 F.2d 1251 (5th Cir. 1978) (lawyer representing two government witnesses with adverse interests had conflict as he would have to prepare defendant-witness and those called to discredit him).

Additionally, the United States is not aware of the full scope of representation that Attorney Kelleter had with M.C., or what type of information was obtained that may present an issue on cross-examination of a further client. Though counsel may contend (and has in discussions with the United States) that no adversity exists, certainly the potential is there and this certainly warrants an inquiry by the Court. The Court, the government, the defendant, and the public have a compelling interest in providing defendant a fair trial, unimpaired by conflicts of interest. "Not only the interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation." *Wheat v. United States*, 486 U.S. 153, 160 (1988). If the defendant does not receive conflict-free representation, any trial verdict may be subject to attack. *See, e.g., United States v. Alvarez*, 580 F.2d 1251 (5th Cir. 1978) (reversing conviction because of defense counsel's simultaneous representation of two government witnesses).[1]

---

1. *See United States v. Winkle*, 722 F.2d 605, 609-12 (10th Cir. 1983) (remanding where defendant's attorney previously represented a government witness; new trial to be ordered if conflict adversely affected attorney's performance at trial).

The Supreme Court in *Wheat* noted that trial courts confronted with multiple representations face the prospect of being "whipsawed" no matter which way they rule:

> If a district court agrees to the multiple representation, and the advocacy of counsel is thereafter impaired as a result, the defendant may well claim that he did not receive effective assistance. On the other hand, a district court's refusal to accede to the multiple representation may result in a challenge such as petitioner's in this case [claiming a denial of his Sixth Amendment right to counsel of choice]. Nor does a waiver by the defendant necessarily solve the problem, for we note, without passing judgment on, the apparent willingness of Courts of Appeals to entertain ineffective-assistance claims from defendants who have specifically waived the right to conflict-free counsel.

Id. at 161-62 (citations omitted). Fortunately, the Court provided considerable guidance to trial courts faced with this dilemma. Where a trial court finds an actual conflict or a serious potential for conflict, it should take necessary steps to ensure that a trial is "conducted within the ethical standards of the profession." *Id.* at 160.

As noted above, while a defendant generally has a Sixth Amendment right to choose his own counsel, there are limits on that right. "[T]he essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159; *Davis*, 780 F. Supp. at 24. Had the government understood this dual representation previously, it would have raised it with the Court directly. It has now done so as soon as the issue was made apparent. While the government does not intend to minimize the defendant's interest in choosing counsel for trial, the question is whether a limitation on that choice will deprive him of his Sixth Amendment rights.

## CONCLUSION

For these reasons, the United States respectfully submits that the representation of the defendant, and an anticipated witness, presents a potential, if not actual, conflict which must be reviewed by the Court. Consequently, given the real potential for conflict, the United States asks that the Court inquire into the conflict of interest issue and make a decision as to whether such an actual or potential conflict exists.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By: _____/s/_____
Brian J. Samuels
Assistant United States Attorney
United States Attorney's Office
Virginia Bar No. 65898
Howard J. Zlotnick
Managing Assistant United States Attorney
Attorneys for the United States of America
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866
Email: Brian.Samuels@usdoj.gov; Howard.Zlotnick@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of October, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

    Trey R. Kelleter
    Counsel for the Defendant
    Kelleter Law, PC
    409 Duke Street, Suite 100
    Norfolk, Virginia 23510
    Tel. 757-654-3060
    Fax: 757-797-0725

                                      /s/
                              Brian J. Samuels
                              Assistant United States Attorney
                              Virginia State Bar No. 65898
                              Attorney for Government
                              United States Attorney's Office
                              Fountain Plaza Three, Suite 300
                              721 Lakefront Commons
                              Newport News, Virginia 23606
                              Phone: (757) 591-4032
                              Fax: (757) 591-0866
                              Email: Brian.Samuels@usdoj.gov