IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA

        v.        Case No. 4:18cr23-RAJ-DEM

BYRON HALE DELAVAN

DEFENDANT'S REPONSE TO THE U.S. MOTION
TO INQUIRE ABOUT POSSIBLE CONFLICT OF INTEREST

Mr. Delavan, through counsel Trey Kelleter, and in response to the government's motion, asserts that neither a conflict of interest nor a serious potential for conflict exists and that, as a result, the Court, after the necessary inquiry, should find that the presumption in favor of a defendant's counsel of choice under the Sixth Amendment has not been rebutted. In support, the defense represents:

## **Background**

1. Kelleter's current representation of Mr. Delavan began in March 2018 upon his arrest on the original indictment in the case. ECF No. 3. Representation began when Kelleter was a partner at Vandeventer Black LLP; it continued when he formed his own firm, KelleterLaw PC, in April 2018, and Mr. Delavan elected to have KelleterLaw PC represent him and ended representation by Vandeventer Black.

2. From at least June 2010 until September 2012, Kelleter, while at Vandeventer Black, represented Mr. Delavan in relation to an FBI investigation of his business practices. Representation

began when Kelleter assisted Mr. Delavan in responding to a grand jury document subpoena in or around June 2010 and ended on September 13, 2012, with a close of representation letter.[1]

3. In the interim, on July 9, 2010, the FBI interviewed Missy Andrews (formerly Cannon) at the offices of Vandeventer Black in Norfolk, with Kelleter present. The FBI 302 of the interview says Kelleter was present "representing Cannon."[2]

4. Kelleter took fifteen pages of handwritten notes from the interview. The notes are silent regarding the basis for his presence at the interview. A page of Kelleter's undated handwritten case notes from that period indicate that he and Andrews spoke at some point before the interview, but no confidences are noted.[3]

5. Kelleter does not recollect any particulars about the FBI interview or any other interaction with Andrews in 2010 other than the most general memory that he attended the FBI interview. He does not remember his prior conversation with Andrews.

6. Kelleter's case file and firm records from this period at Vandeventer Black do not reflect Andrews as a client. There is no intake letter or an end of representation letter and no other case documents reflecting the nature and scope of the representation.

7. Kelleter understands he would have been present in the interview either as Andrews' lawyer or as counsel for her employer. He also understands the FBI agent normally would not have

---

[1] This Response will refer to certain attorney-client case documents from 2010. It amounts to no more than 30 pages, with most being handwritten material that if reduced to 12-point single spaced print would amount to no more than three to four pages. Kelleter is not entirely certain which client file the documents would be considered a part of. As he has not had an opportunity to speak with one of the potential clients -- Ms. Andrews -- at this point, Kelleter intends to produce the materials at the hearing when Ms. Andrews is present, and the court makes inquiry into the issue.

[2] The FBI 302 states the "investigation" was on "07/12/2010," a Monday, but Kelleter's case notes indicate the interview was on July 9, 2010, a Friday. Consistent with these notes, an email in Kelleter's case file from July 11, 2010 refers to the interview in the past tense.

[3] The notes list her name, address, age, lack of criminal record, prior work history, and basic duties

permitted his presence unless he was Andrews' lawyer. However, Kelleter also has had cases in which he attended law enforcement interviews as counsel for an employer when the employee declined to be interviewed unless company counsel was present. That said, in Kelleter's practice, he usually has the employee sign a warning in which the employee acknowledges Kelleter is not the employee's personal lawyer. No signed warning is in Kelleter's case file.

8. Kelleter has no memory of any further interaction with Andrews since the FBI interview in July 2010.

9. Kelleter has no memory of any information imparted by Andrews to him. He can only rely upon his case notes from the FBI interview, which are substantially similar to the information provided in the FBI 302.

10. Kelleter has not had an opportunity to this point to speak with Andrews regarding her understanding of their relationship.

11. The defense has reviewed Andrews' FBI 302 from 2010 and the summary of her law enforcement interview from 2016. The defense does not contest any relevant facts asserted in the documents.

## **Discussion**

The defense understands the need for the Court's review. While Kelleter questions whether he represented Andrews in 2010, the defense acknowledges that absent additional information from Andrews, an inquiry by the court that presumes representation is prudent. In that context, the defense submits that Kelleter's prior representation of Andrews does not give rise to a conflict of interest in his representation of Delavan in this matter.

---

for Mr. Delavan.

The U.S. correctly summarizes the leading case law on the matter, namely *U.S. v Wheat,* 486 U.S. 153 (1988) and its progeny, but it places too much emphasis on cases that involve multiple clients who face potential criminal culpability in a matter and not cases in which the other client is strictly a fact witness who is not in legal jeopardy herself. *Wheat; U.S. v. Levy*, 25 F.3d 146 (2nd Cir., 1994); and *U.S. v. Alvarez*, 580 F.2d 1251 (5th Cir., 1978) all involved multiple defendants in a drug conspiracy; *Hoffman v. Leake*, 903 F.2d 280 (4th Cir., 1990) involved multiple defendants in a murder-for-hire scheme. In each case, each client faced potential criminal culpability, with each having the incentive to point the finger at another defendant, and thus to shift criminal liability on to that person. An attorney in that scenario labors under an obvious conflict, regardless of whether one of the clients becomes a prosecution witness or remains at the defense table.

Here, Ms. Andrews does not face any risk of criminal culpability. She is simply being called as a minor witness at the discretion of the prosecution. In this subset of cases, Hall's *Professional Responsibility in Criminal Defense Practice* aptly summarizes the guiding principle from the case law: "Professional representation of a prosecution witness by defense counsel creates a conflict of interest where the attorney would be unable to effectively cross-examine the witness or challenge the witness's credibility." § 13:9, p. 536, John Wesley Hall, Jr., Thomson West, 2005.

In the multi-defendant cases, the reason for the conflict easily fits into this formulation without one having to ask why the prosecution wants to call the one client as a witness against the other. Defense counsel needs to "challenge the witness's credibility" because the witness will provide testimony that his other client obviously contests, as it directly inculpates him as a fellow participate in a crime. However, the lawyer is "unable to effectively cross-examine the witness" because he is ethically bound not to try to paint him as a liar using client confidences or to try to shift criminal responsibility back on to him to exculpate his other client.

4

In this case, Ms. Andrews is not a fellow defendant or even alleged knowing participant in any crime. There is no obvious reason to think that the defense would challenge the substance of her testimony – it does not intrinsically inculpate Mr. Delavan – and there is no obvious reason to think that defense counsel would need to challenge her credibility. If she testifies in a manner substantially similar to any of the relevant statements contained in the FBI 302, the defense sees no reason to challenge her testimony at all. And even if the defense did want to challenge her credibility, Kelleter is not aware of any client confidences obtained from Andrews that could be used against her.

The mere fact that a defense lawyer previously represented or currently represents a government witness by itself does not create a conflict. By that logic, the government could simply choose as a fact witness on any uncontested issue someone represented by defense counsel and automatically create a conflict for him. That obviously is not the case here, but it makes the salient point: what matters is whether defense counsel is "unable to effectively cross-examine the witness" – and that can only be determined if the court knows what the prosecution intends to bring out on direct examination. In multi-defendant cases, the general scope of that testimony is obvious and almost inherently creates a conflict. In this case, if the scope of direct is what is contained in the FBI 302, there is no conflict for the reasons stated above. If the government intends to go beyond the FBI 302, it is incumbent on the prosecution to clearly articulate the scope of its direct, so the court can determine if truly relevant and admissible testimony from Ms. Andrews would give rise to a conflict. As things now stand, no such conflict exists.

## Conclusion

WHEREFORE, Mr. Delavan, by counsel, moves the court to deny the government's motion to deny Mr. Delavan the counsel of his choice.

          Respectfully submitted,
          BYRON HALE DELAVAN

By    /s/
    Trey R. Kelleter, Esq.
    VSB #41606
    KelleterLaw PC
    409 Duke Street, Suite 100
    Norfolk, Virginia 23510
    Phone: (757) 654-3060
    Fax: (757) 797-0725
    trey.kelleter@kelleterlaw.com

## CERTIFICATE OF SERVICE

I certify that on this 30th day of October 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification to all counsel of record.

    /s/
Trey R. Kelleter, Esq.
VSB #41606
KelleterLaw PC
409 Duke Street, Suite 100
Norfolk, Virginia 23510
Phone: 757/654-3060
Fax: 757/797-0725
trey.kelleter@kelleterlaw.com