IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED

JUL 21 2022

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

BYRON HALE DELAVAN,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

CRIMINAL ACTION No. 4:18-cr-023
CIVIL ACTION No. 4:21-cv-118

*MEMORANDUM OPINION AND ORDER*

Before the Court is Byron Hale Delavan's ("Petitioner") *pro se* Motion to Vacate, Set Aside, or Correct a Sentence ("Motion" or "Motion to Vacate"), pursuant to 28 U.S.C. § 2255. Pet'r's Mot. Vacate, ECF No. 133. The Government responded, and the Court held an evidentiary hearing on the matter on May 12, 2022. Gov't's Opp. Pet'r's Mot. Vacate ("Gov't's Opp."), ECF No. 137; Docket Note, ECF No. 143. For the reasons set forth below, Petitioner's Motion is **DENIED**. Accordingly, Petitioner's Motion to Produce Timesheets and Telephone Records ("Motion to Produce"), ECF No. 145, which was filed on June 22, 2022, is **DISMISSED**.[1]

### I.    FACTUAL AND PROCEDURAL HISTORY

On July 17, 2018, Petitioner was named in a thirty-five-count Superseding Indictment. Superseding Indictment, ECF No. 36. Count One charged Petitioner with Conspiracy to Defraud

---

[1] Petitioner filed, without leave, a Motion to Produce records related to his Motion to Vacate after the evidentiary hearing on his Motion to Vacate took place. At the hearing, the Court denied Petitioner's request for the Government to produce the records at issue in Petitioner's Motion to Produce. Hr'g Tr., ECF No. 144 at 165:24–168:9. For these reasons, Petitioner's Motion to Produce is dismissed pursuant to res judicata. Alternatively, the Court finds that the records Petitioner requests will not alter its evaluation of the evidence presented before and during the evidentiary hearing, and thus, the Court dismisses the Motion to Produce as moot.

the United States, in violation of 18 U.S.C. § 371. *Id.* Counts Two through Twenty-Three charged Petitioner with Aiding in the Preparation of False Tax Returns, in violation of 26 U.S.C. § 7206(2). *Id.* Counts Twenty-Four through Twenty-Six charged Petitioner with Mail Fraud, in violation of 18 U.S.C. § 1341. *Id.* Counts Twenty-Seven through Twenty-Nine charged Petitioner with Wire Fraud, in violation of 18 U.S.C. § 1343. And lastly, Counts Thirty through Thirty-Five charged Petitioner with Monetary Transactions in Property Derived from Specified Unlawful Activity, in violation of 18 U.S.C. § 1957. *Id.*

On March 26, 2019, a jury found Petitioner guilty on all counts. Jury Verdict, ECF No. 103. On July 9, 2019, the Court sentenced Petitioner to 152 months of imprisonment (total for all charges), followed by three years of supervised release. Am. J., ECF No. 124. The Court of Appeals for the Fourth Circuit affirmed Defendant's conviction and sentence on September 9, 2020. *United States v. Delavan*, 826 F. App'x 259 (4th Cir. 2020).

On September 13, 2021, Petitioner filed the instant Motion to Vacate. Pet'r's Mot. Vacate, ECF No. 133. Petitioner contends that his sentence should be vacated or set aside because he received ineffective assistance of counsel. *Id.* In its response, the Government argues that Petitioner was adequately represented. Gov't's Resp. Pet'r's Mot. Vacate, ECF No. 137. The Court held an evidentiary hearing on the matter on May 12, 2022. Docket Note, ECF No. 143.

## II. LEGAL STANDARD

To succeed in an ineffective assistance of counsel claim under 28 U.S.C. § 2255, a petitioner must prove that: "(1) counsel's performance was deficient; and (2) such deficient performance prejudiced the defense." *United States v. Roane*, 378 F.3d 382, 399 (4th Cir. 2004) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

Under the first prong, there is a "'strong presumption' that a trial counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance,'" *Id.* at 404 (quoting *Strickland*, 466 U.S. at 689), and a court's review is "'highly deferential' to counsel," *Bacon v. Lee*, 225 F.3d 470, 478 (4th Cir. 2000) (quoting *Strickland*, 466 U.S. at 689). Thus, a petitioner has the high burden of "identify[ing] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[T]he reasonableness of a lawyer's trial performance must be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances . . . ." *Roane*, 378 F.3d at 404 (internal quotations omitted).

Under the second prong, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is sufficient to undermine confidence in the outcome. *Id.* "Conclusory allegations do not satisfy *Strickland*." *Sanford v. Clark*, 2019 U.S. Dist. LEXIS 20214, at *30 (E.D. Va. Feb. 6, 2019); *see also Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992), *abrogated on other grounds, Yeatts v. Angelone*, 166 F.3d 255, 261 n.4 (4th Cir. 1999).

### III. DISCUSSION

Petitioner alleges that Chad G. Dorsk, Esq. ("Counsel" or "Mr. Dorsk") (1) failed to interview Petitioner before trial; (2) did not adequately investigate the facts of the case prior to trial; and (3) failed to present Petitioner's testimony during trial.[2] Petitioner argues ultimately that

---

[2] Petitioner also indicates in his Rebuttal that Mr. Dorsk failed to adequately cross-examine Neil Smith, a witness at Petitioner's trial. Pet'r's Rebuttal at 3–4. Petitioner appears to abandon this allegation. Hr'g Tr. at 6:7–7:5. Even if the claim was not abandoned, the Court finds that Mr. Dorsk adequately cross-examined Mr. Smith. Hr'g Tr. at 96:2–20 (admitting that Mr. Dorsk cross-examined Mr. Smith, made arguments on Petitioner's behalf, and attempted to impeach Mr. Smith). Alternatively, it is not reasonably probable that any conceivable improvement in Mr. Dorsk's examination of Mr. Smith would have changed the outcome of the trial.

Mr. Dorsk "did not prepare a defense in this case in advance of the trial." Hr'g Tr. at 6:13–18. For the reasons stated below, the Court finds Petitioner's testimony highly unpersuasive given that there are blatant contradictions in his testimony, he was impeached several times during the evidentiary hearing, and there was little to no evidence to support Petitioner's claims other than his own testimony.

A.   **Counsel's Performance (*Strickland* Prong I)**

   *1.   Interviewing Petitioner*

Petitioner asserts that Mr. Dorsk completely failed to interview Petitioner or otherwise discuss Petitioner's case with Petitioner before trial. Pet'r's Mot. Vacate at 8 ("It is inexcusable that trial counsel would not have at the very least interviewed Petitioner prior to trial."); Pet'r's Rebuttal at 2 ("[O]nly rarely did [Counsel] and Petitioner speak on the phone. Those calls that did occur were brief and customarily dealt with housekeeping issues, to wit: setting times for phone calls."). The record, however, including Petitioner's own testimony, reflects that Mr. Dorsk and Petitioner discussed the facts of Petitioner's case before trial via phone, email, and in-person. *See e.g.* Hr'g Tr. at 13:10–15, 48:11–19 (admitting that Petitioner and Mr. Dorsk discussed the "facts of the case" and plea agreement on the phone before February 8, 2019); Hr'g Tr. at 14:22–15:2 (admitting that Mr. Dorsk responded to the emails Petitioner sent in the weeks leading up to trial by calling Petitioner to discuss the emails); Gov't's Opp. at Ex. 1 ("Mr. Dorsk's Affidavit") (outlining, non-exhaustively, approximately 187 communications between Mr. Dorsk and Petitioner regarding Petitioner's case); Hr'g Tr. at Def. Ex. 1 (containing copies of written communications between Petitioner and Mr. Dorsk); Hr'g Tr. at 136:6–137:3 (recalling an in-person meeting between Petitioner and Mr. Dorsk in October 2018); Hr'g Tr. at 136:23–137:17 (stating that Petitioner and Mr. Dorsk spoke on the phone at least once a week); Hr'g Tr. at 141:7–

21 (reiterating the same or similar interactions); Hr'g Tr. at 49:18–50:13, 156:8–24 (recalling an in-person meeting between Petitioner and Mr. Dorsk after a motion hearing in early 2019).

Regarding Petitioner not meeting with Mr. Dorsk in-person as often as he claims he wanted in his pleadings, the record reflects that Petitioner's defense was developed with a previous trial counsel ("Mr. Kelleter"), who withdrew from the case a week before trial when the trial was originally scheduled in late 2018. Hr'g. Tr. at 56:20–57:23. Mr. Kelleter later transferred his entire case file to Mr. Dorsk. *Id.* Mr. Dorsk informed Petitioner that he reviewed the entire case file and advised Petitioner on whether additional in-person meetings were necessary based on the information they had already discussed or exchanged. Hr'g Tr. at 42:23–43:5, 45:3–5, Def. Ex. 1. The Court does not find Mr. Dorsk's judgment in this regard unreasonable in light of all of the circumstances, especially given that Petitioner lived near Asheville, North Carolina and not in Norfolk, Virginia. Hr'g Tr. at 13:19–20.

To the extent that Mr. Dorsk did not respond to every one of the emails Petitioner sent him, Mr. Dorsk explained to Petitioner multiple times during his representation, and again during the evidentiary hearing, that he had Mr. Kelleter's entire case file, including all of the emails Petitioner was forwarding or resending Mr. Dorsk, and therefore, Mr. Dorsk did not need duplicates of the same emails and information. Hr'g Tr. at 42:23–43:5 (admitting that Mr. Dorsk explained this to Petitioner when he was first retained), 50:18–51:1 (admitting that Mr. Dorsk explained this again to Petitioner in the weeks leading up to trial), 141:7–13 (reiterating the same).

The Court also finds Petitioner's testimony unpersuasive in light of the unreasonableness of some allegations and various contradictions in his sworn testimony and pleadings. For example, Mr. Dorsk denies only discussing "housekeeping issues" with Petitioner on the phone, and the Court finds it unlikely that a defense counsel would continually call their

5

client only to keep scheduling future phone calls and never actually discuss the case with the Petitioner during the calls that occurred. Furthermore, there are several contradictions between Petitioner's allegations and his testimony at the evidentiary hearing. For example, to refute Mr. Dorsk's claim in his affidavit that Petitioner told Mr. Dorsk before February 2019 that Petitioner did not wish to testify, Petitioner states in his Rebuttal:

> At no time during November, December, or January was Chad Dorsk thought of or considered to replace Kelleter. Only in early February of 2019, did the Petitioner approach Dorsk to replace Kelleter. Please note that there were no emails or record of any communication between Petitioner and Dorsk prior to February 06, 2019.

Pet'r's Rebuttal at 2. At the hearing, however, Petitioner testified to the following:

> Q. Why are you e-mailing Chad Dorsk . . . on January 15th of 2019 and discussing witnesses with him?
>
> A. There was the possibility that I would be able to hire Mr. Dorsk or another attorney. I was out attorney shopping, and I was keeping Mr. Dorsk up to speed. By this time, January 15th, or I think it's -- yeah, January 15th and January 13th, I had pretty much settled on the fact that Mr. Dorsk would be representing me because Mr. Jenkins, who I had tried to hire, could not fit in the Court's schedule.

Hr'g Tr. at 22:22–23:5; *see also* Hr'g Tr. at 59:2–9 (admitting that Petitioner emailed Mr. Dorsk from December 2018 through February 2019); 87:14–90:21 (admitting that Mr. Dorsk was his counsel of choice as early as December 2018). Moreover, when the Court inquired as to whether Petitioner had fully counseled with Mr. Dorsk at the beginning of Petitioner's trial, Petitioner responded under oath, "Yes, sir." *Id.* at 60:25–61:14, 62:4–63:9. For these reasons, the Court finds that Mr. Dorsk did adequately interview or otherwise discuss the facts of the case and defense strategy with Petitioner in advance of Petitioner's trial.

### 2. *Investigating the Facts of the Case and Related Issues*

Petitioner alleges that Mr. Dorsk did not discuss the defense strategy with him or adequately investigate the facts of the case, stating that, "[c]ounsel failed to interview a single prospective witness," Pet'r's Mot. Vacate at 11, despite Petitioner "providing names and contact information for key individuals which [sic] knowledge of the case against him." *Id.* at 8. As an initial matter, the record reflects that Mr. Dorsk and Petitioner did discuss the facts of the case and Petitioner's defense. *See e.g.* Hr'g Tr. at 13:10–15, 48:11–19, 104:22–105:23. Regarding the witnesses Petitioner proposed before trial, the record reflects that Mr. Dorsk relied on interview notes in the case file he inherited from Mr. Kelleter to determine that the vast majority of those proposed witnesses would not have advanced the defense. Hr'g Tr. at 136:23–137:17, 139:15–141:5, Gov't's Ex. 1, Gov't's Ex. 10. Petitioner admits that Former Judge Walter Kelley's (Mr. Kelley") testimony would not have been helpful regarding certain trial issues and fails to specify any potentially relevant testimony from Mr. Kelley other than his general opinion of Petitioner. *Id.* at 109:20–110:3. Neil Smith was called at trial and, as discussed above (*supra* at footnote 1), he was adequately cross-examined by Mr. Dorsk. There is no record of any of the other witnesses Petitioner mentions in his pleadings being raised with Mr. Dorsk before trial. *See e.g.* 99:1–7, 102:2–9. For these reasons, the Court finds that Mr. Dorsk's investigation of the facts and witness strategy was based on reasonable professional judgment.

Similar to the first allegation, the Court also finds Petitioner's testimony on this allegation unpersuasive in light of the claim's unreasonableness and various contradictions in Petitioner's sworn testimony. For example, Petitioner's contentions with Mr. Dorsk's investigation of the facts are based primarily on Mr. Dorsk's alleged failure to subpoena or otherwise contact potential witnesses. Petitioner has no evidence, however, that Mr. Kelleter (who withdrew only a

7

week before the initial trial date) subpoenaed any witnesses and responded, "I don't know," when asked whether anyone was subpoenaed for his previous trial date. Hr'g Tr. 75: 20–23, 76:8–14. When asked about Mr. Kelleter's defense strategy, Petitioner first stated, "I don't know what— what Mr. Kelleter's plan was," but then testified shortly thereafter that he knew Mr. Kelleter's defense plan. *Id.* at 75:20–76:10; *compare id.* at 92:5–20 (stating that he knew "exactly what was going on" with Mr. Kelleter regarding witnesses) *with id.* at 99:25–100:6 (stating that he did not know "what was going through Mr. Kelleter's mind" regarding witnesses). Mr. Dorsk informed Petitioner that he was relying on the interview notes and other case materials he received from Mr. Kelleter in crafting Petitioner's defense. *Id.* at 42:23–43:5, 50:18–51:1. Petitioner maintains, however, that Mr. Kelleter provided effective counsel. *Id.* at 76:2–7. The Court finds Petitioner's change of heart—post-conviction—regarding Mr. Dorsk's and Mr. Kelleter's witness strategy rather convenient for § 2255 purposes.

Moreover, at the beginning of trial, the Court asked Petitioner whether he had "any complaints to the effectiveness of [his] counsel," and Petitioner responded under oath, "No, sir." Hr'g Tr. at 63:22–64:1. Furthermore, at his sentencing, which was several months after his conviction, when the Court asked whether he was "satisfied with the advice and counsel [Mr. Dorsk] provided," Petitioner responded, "I am." *Id.* at 67:1–6. The Court followed up again and asked whether Petitioner believed Mr. Dorsk has been "an effective advocate," and Petitioner responded in the affirmative. *Id.* at 67:24–68:2. And finally, at trial, the Court asked Petitioner if Mr. Dorsk was correct in stating that Petitioner did not wish to call any witnesses. *Id.* at 64:2–8. Petitioner responded, "Yes, sir." *Id.* For these reasons, Petitioner's allegations against Mr. Dorsk's investigation of the facts, including his witness strategy, fails under *Strickland*'s first prong.

### 3. *Petitioner Testifying*

Petitioner states that his testimony was the only one to "challenge the veracity" of Neil Smith's testimony, and that such testimony "would have significantly undermined the government's case and likely would have produced a different outcome." Pet'r's Mot. Vacate at 8. Petitioner never indicated, however, how this would be, and thus, his claim is without merit. *Sanford*, 2019 U.S. Dist. LEXIS 20214, at *30; *Nickerson*, 971 F.2d at 1136. Furthermore, Petitioner never indicated to Counsel that he wanted to testify, Hr'g Tr. at 145:4–7, and willfully declined to testify when this Court asked if he wanted to at trial. *Id.* at 117:24–118:3, 148:12–16. In fact, Mr. Dorsk stated that Petitioner did not want to testify because of fears that a collateral legal matter would be raised by the government to attack Petitioner's credibility, in addition to other issues. *Id.* at 143:14–145:3. Petitioner has ultimately given conflicting testimony on this issue. *See id.* at 78:12–82:10 (denying the details of a judgment against Petitioner for fraud, then later admitting to the details after impeachment); 106:23–107:11(admitting that Petitioner wanted information regarding a collateral matter limited at trial). For these reasons, Petitioner's claim that Mr. Dorsk errored by failing to present Petitioner's testimony fails under *Strickland*'s first prong.

### B. Prejudice (*Strickland* Prong II)

Even if any of Petitioner's allegations did satisfy the first prong of *Strickland*, Petitioner has failed to prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." 466 U.S. at 694. First, Petitioner challenged the evidence against him on appeal and was unsuccessful. *United States v. Byron Hale Delavan*, No. 19-4524 (4th Cir. 2020), ECF No. 130 (unpublished). Petitioner also admits that Mr. Dorsk relied on information Petitioner provided to him before trial to cross-examine

9

every witness and otherwise defend. Hr'g Tr. at 73:7–14. Thus, the Court is not convinced that Mr. Kelley or any of the other witnesses Petitioner lists in his Rebuttal, Pet'r's Rebuttal at 4–5, would have altered the outcome, especially since only one of the proposed witnesses appeared at the evidentiary hearing. Moreover, at sentencing, Petitioner gave a "lengthy" unsworn statement to the Court, in which he stated that he "erred badly and accept[s] full responsibility for [his] actions" and wanted "to offer each and every one of the victims who [he] . . . harmed [his] sincere and heartfelt apology," in addition to other similar statements in which he accepted responsibility for his offenses. Hr'g Tr. at 68:23–71:14. Therefore, Petitioner has failed to prove the second prong of the *Strickland* test, and his Motion to Vacate for ineffective assistance of counsel fails.

## IV. CONCLUSION

For these reasons, Petitioner's Motion to Vacate is **DENIED** and his Motion to Produce is **DISMISSED**.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to counsel for the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Norfolk, Virginia

July 21, 2022

Raymond A. Jackson
United States District Judge