IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**BYRON HALE DELAVAN,**

          **Petitioner,**

v.                                                            **Criminal No. 4:18-cr-023**

**UNITED STATES OF AMERICA,**

          **Respondent.**

*MEMORANDUM OPINION AND ORDER*

Before the Court is Byron Hale Delavan's ("Petitioner") Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). ECF No. 176 ("Pet'r's Mot."). The Government opposed the motion. ECF No. 179 ("Resp. Opp."). Petitioner did not submit a reply. This matter is now ripe for judicial determination. For the reasons below, Petitioner's Motion is **DENIED**.

## I.  FACTUAL AND PROCEDURAL HISTORY

On July 17, 2018, Petitioner was named in a thirty-five count Superseding Indictment. ECF No. 36. Count One charged Petitioner with Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371. *Id.* Counts Two through Twenty-three charged Petitioner with Aiding in the Preparation of False Tax Returns, in violation of 26 U.S.C. § 7206(2). *Id.* Counts Twenty-four through Twenty-six charged Petitioner with Mail Fraud, in violation of 18 U.S.C. § 1341. *Id.* Counts Twenty-seven through Twenty-nine charged Petitioner with Wire Fraud, in violation of 18 U.S.C. § 1343. *Id.* Counts Thirty through Thirty-five charged Petitioner with Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, in violation of 18 U.S.C. § 1957. *Id.* On March 19, 2019, a six-day jury trial commenced before Your Honor. ECF

Nos. 95–101.

According to the Presentence Investigation Report ("PSR"), Petitioner and Neil Curry Smith (a co-defendant) conspired to defraud the Internal Revenue Service. Present. Investig. Rep. ¶¶ 5–6, ECF No. 160 ("PSR"). From approximately 2011 to 2015, Petitioner owned and/or operated three different businesses in the Eastern District of Virginia. *Id.* ¶ 7. The businesses are the following: American Recovery Services ("ARS"), Tidewater Insurances Services ("TIS"), and Tradewinds Business Alliance ("TBA"). *Id.* Smith prepared federal income tax returns for ARS (tax years 2009–2013, 2015) and TBA (tax years 2010–2011, 2013, 2015). *Id.* ¶ 8. For years 2011 through 2015, ARS and TBA reported little to no income on each company's federal tax return, yet claimed large losses that generated from the reporting of bad debt expenses of several hundred dollars a year. *Id.* According to Petitioner, ARS and TBA purchased old debts and/or judgments. *Id.* ¶ 9. When these debts could not be collected, the members/partners of ARS and TBA would be able to write these off as losses on their individual tax returns. *Id.* As part of the scheme, Defendant marketed a "tax plan" to several individuals, many of whom were clients of his life insurance business, to become members/partners in ARS and TBA. *Id.* ¶ 10. Defendant told these individuals that joining the "plan" would allow them to receive most or all federal tax withholdings as a refund, which could pay the life insurance premiums they owed him. *Id.* To join the plan, one would pay a fee of $10,000 or $12,500. *Id.* ¶ 11. Once completed, the individual participant was added as a "partner" of ARS and/or TBA. *Id.*

Additionally, Smith also prepared federal tax returns for all but one of the partners. *Id.* ¶ 13. Petitioner and Smith assigned and affixed the ownership percentages of each partner based on the size of loss needed to offset each partner's taxable income, which resulted in inflated refunds for the clients. *Id.* ¶ 14. Petitioner and Smith also caused losses to be reported on the partner's tax

returns as "non-passive" losses. *Id.* ¶ 15. To qualify as "non-passive," a taxpayer must participate in the business that has sustained the losses. *Id.* The tax returns Smith prepared all reported the losses from ARS and TBA as non-passive. *Id.* Further, none of the so-called partners ever participated in any of the businesses, and they had little to no knowledge of what kind of business ARS or TBA even conducted. *Id.* As a result, Petitioner and Smith caused the partners to receive false refunds totaling $408,505 from 2011 to 2015. *Id.* ¶ 16.

Petitioner also solicited several individuals to provide funds for a debt recovery business and the purchase of collectibles. *Id.* ¶ 20. Additionally, Petitioner solicited investments and/or loans from several individuals that he represented were to be used by ARS and/or TBA to purchase more bad debt or for other debt-related collection activities. *Id.* ¶ 21. Instead, Petitioner used these funds to pay for unrelated personal and business expenses and to repay prior investors. *Id.* ¶ 22. On numerous occasions, Petitioner failed to meet the repayment schedules and provided various excuses regarding why repayments could not be made, but also sent interest payments via checks through the mail. *Id.* ¶ 23. As a result, Petitioner's victims suffered a total loss of $1,257,964.00. *Id.* ¶ 33.

In addition to the PSR, Petitioner reported no mental health issues. *Id.* ¶ 92. However, Petitioner reported frequent alcohol consumption. *Id.* ¶¶ 93–95. Accordingly, the PSR assessed Petitioner with a total offense level of 33, a criminal history category of I, and a recommended guidelines sentence of 133–168 months on all Counts. *Id.* ¶¶ 112–13. On July 9, 2019, the Court sentenced Petitioner to 152 months on all Counts, followed by 3 years of supervised release. ECF Nos. 116, 124.

On September 9, 2020, the United States Court of Appeals for the Fourth Circuit affirmed Petitioner's conviction and sentence. ECF No. 131. On January 11, 2024, Petitioner filed a *pro se*

motion for compassionate relief. ECF No. 165. On March 15, 2024, Petitioner filed this Motion through counsel. On April 15, 2024, the Government filed its response in opposition. Petitioner did not file a reply. Currently, Petitioner is incarcerated at McKean FCI with a projected release date of January 7, 2028.[1]

## II. LEGAL STANDARD

### A. The Threshold Requirement Standard

A petitioner may bring a motion to modify their sentence after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [petitioner]'s behalf or the lapse of 30 days from the receipt of such a request by the warden of the [petitioner]'s facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release has two options after requesting that the Bureau of Prisons ("BOP") bring a motion on their behalf: (1) exhaust their administrative remedies; or (2) wait 30 days from the date of their initial request to the BOP. *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) ("§ 3582(c)(1)(A) outlines two routes – one of which does not require exhaustion of administrative remedies.").

In other words, a petitioner may satisfy the threshold requirement if they "request[] the Bureau of Prisons to bring a motion on their behalf and *either* fully exhaust[] all administrative rights to appeal the Bureau's decision *or* wait[] 30 days from the date of their initial request to file a motion in the district court." *Id.* (emphasis in original). Thus, a petitioner who made a request to the BOP at least 30 days prior may seek compassionate release with the district court whether the BOP has ruled on the request or not. *Id.* (holding petitioner satisfied the threshold requirement by filing his compassionate release motion 149 days after submitting a request to the warden, which

---

[1] *See also* Federal Bureau of Prisons, "Find an Inmate," *BOP.gov*, https://www.bop.gov/inmateloc/ (last visited Apr. 26, 2024) (listing Petitioner's release date as Jan. 7, 2028).

the warden denied) (citing *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021); *United States v. Harris*, 973 F.3d 170, 171 (3rd Cir. 2020); and *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020)). Moreover, the threshold requirement is a non-jurisdictional claim-processing rule, and thus may be waived or forfeited if not timely raised. *Id.* at 129–30 (collecting cases from sister circuits holding the same).

### B. The Compassionate Release Standard

As amended by the First Step Act, a court may modify a term of imprisonment by motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" is defined by the United States Sentencing Commission ("Sentencing Commission") in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13. Yet after the First Step Act amended § 3582(c)(1)(A) to allow defendants to petition the district court directly without clearance from the BOP, U.S.S.G. § 1B1.13 became advisory and nonbinding on courts' application of § 3582(c)(1)(A) because § 1B1.13 was no longer an "applicable" Sentencing Commission policy statement. *See United States v. McCoy*, 981 F.3d 271, 276, 283 (4th Cir. 2020). Courts were thus "empowered to consider *any* extraordinary and compelling reason for release that a defendant might raise." *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)). The most recent amendments to the Sentencing Guidelines went into effect on November 1, 2023, and U.S.S.G. § 1B1.13 now contemplates that a defendant may file a motion for compassionate release directly with the district court. *See* U.S.S.G. § 1B1.13(a) (2023). Therefore, § 1B1.13 is now an "applicable" policy statement under § 3582(c)(1)(A), and the Court must ensure that a sentence reduction granted under § 3582(c)(1)(A) is "consistent with" that Guideline. 18 U.S.C. § 3582(c)(1)(A); *see Brown*, --- F. Supp. 3d ---, 2023 WL 8653179, at *2 (D. Md. Dec.

5

13, 2023).

Section 1B1.13(b) identifies five broad categories by which defendants may demonstrate extraordinary and compelling reasons to reduce a sentence: (b)(1) medical circumstances; (b)(2) the defendant's age; (b)(3) family circumstances; (b)(4) whether the defendant was a victim of abuse; and (b)(6) whether the defendant received an unusually long sentence. § 1B1.13(b)(1)–(4), (6). Section 1B1.13(b) also includes a catch-all provision allowing courts to find extraordinary and compelling circumstances when "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." § 1B1.13(b)(5). This catch-all provision allows courts to continue to exercise discretion in considering "any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284; *see Brown*, 2023 WL 8653179, at *2 ("This catchall maintains the broad discretion conferred on district courts to consider a wide array of extraordinary and compelling justifications for release."); *United States v. Gaither*, No. 5:19-00012-KDB-DSC-1, 2023 WL 7726622, at *2 (W.D.N.C. Nov. 15, 2023) ("The new policy statement largely preserves the discretion district courts held to consider any extraordinary and compelling reason for release."). Therefore, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, when evaluating whether extraordinary and compelling circumstances exist to modify a sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

#### A. The Threshold Requirement

The Court finds that Petitioner satisfied the threshold requirement. The Government does not contest such. *See* Resp. Opp. On November 2, 2023, Petitioner submitted a request for

compassionate release to the Warden, which the Warden denied on November 21, 2023. ECF No. 166 at 32. Thus, Petitioner meets the threshold requirement.

### B. Petitioner's Compassionate Release Request

The Court now addresses whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence. Petitioner argues his familial circumstances are extraordinary and compelling warranting release under U.S.S.G. § 1B1.13(b)(3)(C). Pet'r's Mot. at 7–8. Additionally, Petitioner argues his rehabilitative efforts warrant compassionate release under U.S.S.G. § 1B1.13(d). *Id.* at 5–6. Lastly, Petitioner argues the sentencing factors under 18 U.S.C. § 3553(a) support compassionate release. *Id.* at 13. Therefore, Petitioner asks the Court to release him from incarceration and begin supervised release. *Id.* at 9–10.

The U.S.S.G. § 1B1.13(b)(3)(C) states "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" is considered as an extraordinary circumstance when determining compassionate release. The Sentencing Guidelines do not define "incapacitation." Turning to Black's Law Dictionary, "incapacitation" is defined as "1. [t]he action of disabling or depriving of legal capacity" or "2. [t]he quality, state, or condition of being disabled or lacking legal capacity." *Incapacitation, Black's Law Dictionary* (11th ed. 2019). Additionally, U.S.S.G. § 1B1.13(b)(3)(D) states:

> The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "immediate family member" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

First, Petitioner fails to show his familial circumstances warrant extraordinary and compelling release. Here, Petitioner asserts that his mother suffers from mild cognitive

7

impairment and macular degeneration. Pet'r's Mot. at 8. According to Petitioner, his mother is going blind and is suffering from diminishing mental acuity. *Id.* Additionally, Petitioner's mother suffered from a pulmonary embolism at the rehabilitation facility she is housed at.[2] *Id.* Consequently, Petitioner asserts he is his mother's only child and the only family member available to care for her. *Id.* However, Petitioner's mother's medical documents show that her health needs are improving. ECF No. 166. To the Court, it does not appear that Petitioner's mother, while having medical conditions at 94 years of age, is incapacitated or that Petitioner is the only available caregiver. Petitioner has a son, who lives in Denver, Colorado, who can assist Petitioner's mother, and Petitioner's mother resides in a rehabilitation facility where she is receiving care from the aides. ECF No. 165 at 4–5; Pet'r's Mot. at 5. Thus, Petitioner has not established his familial circumstances under U.S.S.G. § 1B1.13(b)(3)(C) would constitute extraordinary and compelling circumstances justifying compassionate release.

Second, Petitioner's rehabilitation efforts are insufficient to warrant compassionate release. Petitioner asserts that his substantial time in prison has rehabilitated him. Pet'r's Mot. at 5. Petitioner argues that he completed various courses, including RDAP, Blackstone Paralegal Course, Certified Logistics Associate and Technician certificates, and the Department of Labor Janitorial Supervisory Program. *Id.* Although the Court recognizes and commends Petitioner for his participation in various educational, vocational, and rehabilitative courses, these efforts are not extraordinary and compelling to earn a sentence reduction. *See* U.S.S.G. § 1B1.13(d) (stating "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."); *see also United States v. Woolridge*, No. 3:09CR156 (DJN), 2021 WL 415131, at *7 (E.D. Va. Feb. 5, 2021); *United States v. Ahmad*, No. 1:11-cr-554-TSE,

---

[2] Petitioner has not provided any documentation supporting this claim.

ECF No. 75 (E.D. Va. Apr. 8, 2021) (finding that the defendant's coursework did not support compassionate release, reasoning that "[i]t is not uncommon for a defendant to take educational classes to pass the time in prison"). Petitioner is expected to follow the rules and improve himself while in prison. *United States v. Logan*, 532 F. Supp. 3d 725, 735 (D. Minn. 2021). Thus, Petitioner has not established his rehabilitative efforts would constitute extraordinary and compelling circumstances justifying compassionate release.

Third, even if Petitioner has shown extraordinary and compelling circumstances warranting release, the § 3553(a) factors do not weigh in favor of Petitioner's compassionate release. The seriousness of Petitioner's conduct in committing several fraud schemes remains unchanged. Petitioner utilized his educational background to defraud several victims and provided excuses regarding why he could not make repayments. Nevertheless, Petitioner is attributed with $1,666,469.00 in restitution. PSR ¶ 38.

Additionally, Petitioner's release plan does not adequately protect the public from the potential of a subsequent offense. If released, Petitioner plans to live in his home in Fairview, North Carolina, or some other residence where he could care for his mother and ensure she takes her medications properly. Pet'r's Mot. at 8–9. The Court does not doubt that Petitioner could assist his mother with her medical needs, but his familial circumstances are not extraordinary and compelling to warrant release. To date, Petitioner has served approximately 39% of his 152-month sentence, with a projected release date of January 7, 2028. Resp. Opp at 9. Despite commendable evidence of Petitioner's rehabilitation, the Court finds that the § 3553(a) factors do not weigh in Petitioner's favor, and his release would not promote respect for the law or provide adequate deterrence. Therefore, Petitioner does not qualify for compassionate release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner has not shown an extraordinary and compelling reason to grant compassionate release. Thus, Petitioner's Motion for Compassionate Release is **DENIED**. ECF Nos. 165, 176.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Newport News, Virginia
June 12, 2024

Raymond A. Jackson
United States District Judge